UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROY HOWARD SMITH, JR.,

    Plaintiff,                                              3:03-CV-754-J-99TEM

vs.

HCA INC., etc.,

    Defendants.
_____/

## ORDER

This Cause is before the Court on Defendant Memorial Hospital's Motion for Summary Judgment... (Dkt. 56);[1] Defendant HCA's Motion for Summary Judgment..... (Dkt. 63); Defendants' Motion to Strike Plaintiff's Jury Demand... (Dkt. 103) and Defendants' Motion to Exclude.... (Dkt. 104). Plaintiff has filed oppositions to these motions. Also before the Court are several motions to strike exhibits to Defendants' summary judgment motions and the oppositions filed to these motions (Dkts. 67, 69, 87, 90, and 93). These motions are moot because the Court does not rely upon the evidence at issue in making the determinations contained in this Order. Additionally before the Court is Plaintiff's Third Motion for Extension of Time to File Jury Instructions...... (Dkt. 169) which is granted. Upon consideration of the other motions, the Court finds as follows:

---

[1] Defendant filed a twenty one page memorandum of law in addition to the nine page motion which violates the local rules of this Court. In the future, pleadings that violate page limits will be stricken.

1

**Background**

Plaintiff's Second Amended Complaint alleges claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* (Title VII); the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* (ADA); the Florida Civil Rights Act, §760.10 *et seq.* (FCRA); the Florida Whistleblower Act, § 448.101 *et seq.*(Florida Whistleblower Act); and the Employee Retirement Income Security Act, 29 U.S.C. §1132(e)(1) (ERISA). Plaintiff's claims are based on his allegation that he was unlawfully demoted and then ultimately terminated from his employment with Defendant. Plaintiff has dismissed his claims for retaliation under Title VII, the ADA and the FCRA (see Dkt. 151).

Plaintiff alleges that the employment actions at issue took place: (1) because of his gender; and/or (2) because of his disability - coronary artery disease; and/or (3) to interfere with his exercise of rights to ERISA benefits; and/or (5) because he objected to the hospital's policy requiring employees to advise senior management of child abuse suspicions before reporting them to the Florida Department of Children and Families (DCF).

Plaintiff was employed for Defendant Hospital for approximately twenty years. While employed for Defendants,[2] Plaintiff had simultaneous managerial responsibility for three departments: the Child Development Center (CDC), the Cardio Pulmonary Rehab Department (Cardiac Rehab Center), and the Heart Fitness Center (Fitness Center). Plaintiff reported to two different Hospital Vice Presidents: one for the Cardiac Rehab and Fitness Center and another for the CDC. Both Vice Presidents reported directly to Hospital CEO Rex Etheredge. (Etheredge Aff., ¶3).

---

[2] HCA contends that it was not Plaintiff's employer.

2

In December of 2001, the Plaintiff had emergency heart surgery. While he was on medical leave, a child's arm was dislocated in the CDC and one of the child care workers was suspected of causing the injury. Evidently, after the injury occurred, Ms. Betty Raimondo, who was acting as CDC director in Plaintiff's absence, called Plaintiff to ask him what she should do about the suspected abuse and Plaintiff told her to call DCF immediately. According to Plaintiff and Ms. Raimondo, when Plaintiff returned to work from his medical leave both he and Ms. Raimondo were "interrogated" about the incident and reprimanded for calling the state authorities before they informed hospital management about the incident. Shortly thereafter, Plaintiff was informed that he would no longer be the director of the CDC and Ms. Raimondo was given oversight of the center.[3]

According to the hospital, Mr. Etheredge decided to relieve Plaintiff of his CDC responsibilities in an effort to eliminate an unnecessary level of management in the center by assigning responsibility for the CDC to Ms. Raimondo, a lower-level manager. Also according to Defendant,[4] during the second quarter of 2002, the Hospital was in the process of doubling its cardiac lab capacity in an effort to increase the number of cardiac procedures and surgeries thereby increasing the number of patients using the Fitness Center and Cardiac Rehab facilities. According to Defendants, the removal of Plaintiff's CDC responsibilities did not affect his pay or position level; Plaintiff disputes this allegation.

---

[3] Defendant maintains that Ms. Raimondo was not given the same title as Plaintiff when she was given responsibility for the center. However, because she effectively took over Plaintiff's prior duties and received a raise, (Raimondo at 119, 124, and 159), the Court will consider her to have replaced Plaintiff in his CDC duties for the purposes of this Order.

[4] At times in this Order, the Defendants will be referred to in the singular sense. HCA's potential liability will be discussed later in this Order.

3

Plaintiff asserts that the change amounted to punishment and additionally maintains that losing his CDC position involved a loss of the ability to receive bonuses for his work in the CDC. Plaintiff also maintains that he was the manager rather than the director of the Cardiac Rehab Center and Fitness Centers. Thus, Plaintiff maintains that he lost his one and only director level position when he lost oversight of the CDC.

After the change in his job assignments, Plaintiff worked at the hospital from May 6, 2002 through August 21, 2002. From late August 2002 through mid-November 2002, Plaintiff went out on medical leave of absence again. Defendants contend that during this time the Cardiac Rehab and Fitness Centers functioned appropriately, causing Mr. Etheredge to question the need for a director level manager to oversee these operations. In mid-November 2002, Defendant authorized an additional four weeks of paid sick time for Plaintiff. Plaintiff submitted additional leave requests in January and February of 2003, requesting medical leave through late March 2003.

According to Defendant, its leave policy permits medical leave up to six months and Plaintiff's leave of absence was due to expire on February 26, 2003. On February 25, 2003, Defendants sent Plaintiff a letter advising him that his six month leave was due to expire the next day and, therefore, he would not be returning to work within the time frame established by the hospital's policy. The hospital contends that several months later it decided to eliminate Plaintiff's position and notified Plaintiff on June 9, 2003 that the position elimination was effective on September 7, 2003. Defendant maintains that Plaintiff remained eligible for employment at the Hospital in other assignments once authorized by his physician(s) to return to work. Plaintiff, however, did not return to work after August 2002. Plaintiff testified that he has

not been able to return to work because of his mental and physical conditions.

**Standard**

Summary judgment shall be granted for the moving party only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A court looks to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," *id.*, in determining whether summary judgment is appropriate. The movant bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hairston v. Gainesville Sun Publ. Co.*, 9 F.3d 913, 918 (11th Cir. 1993); *Warrior Tomigbee Transp. Co. v. M/V/ Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). Once the moving party satisfies its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324; *Howard v. BP Oil Company, Inc.*, 32 F.3d 520, 524 (11th Cir. 1994).

When deciding a motion for summary judgment, "[i]t is not part of the court's function . . . to decide issues of material fact, but rather [it is to] determine whether such issues exist to be tried . . . " and "[t]he court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d at 919 (citing *Anderson*, 477 U.S. at 242)). The only determination for the court in a summary judgment proceeding is whether there exists genuine and material issues of fact to be tried. *Hairston*, 9 F.3d at 921; *Dominick v. Dixie Nat'l Life Ins. Co.*, 809 F.2d 1559 (11th Cir. 1987). All the evidence and the inferences from the underlying facts must be viewed in the light most favorable to the nonmovant. *Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

The Eleventh Circuit has commented that summary judgments for Defendant are not rare in employment discrimination cases. *Earley v. Champion International Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). Indeed, where the evidence supporting a plaintiff's allegation of discrimination is merely "colorable," or is "not significantly probative," summary judgment may be granted. *Id.* at 1080. Conclusory, self serving, or uncorroborated allegations in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment or directed verdict. *Earley*, 907 F.2d at 1081. Further, a plaintiff cannot rely on suspicion or conjecture to prove that discrimination motivated an adverse employment action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50; *Walker v. Nationsbank of Florida N.A.*, 53 F.3d 1548, 1558 (11th Cir. 1995).

## Analysis
### Gender Discrimination

To establish a prima facie case under Title VII, the Plaintiff must show that: "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class." *Maynard v. Board of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003). Defendants contend that they are entitled to summary judgment because Plaintiff cannot meet the third and fourth elements of the prima facie case.

Regarding the third element, Defendants argue that removing Plaintiff's CDC oversight does not rise to the level of an adverse employment action because Plaintiff suffered no tangible harm. To establish an adverse employment action, the plaintiff must "show a *serious and*

*material* change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original). Moreover, "the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.*

Plaintiff, however, proffers evidence that the removal of his CDC duties was viewed not only by him but by Ms. Hawkinberry as a punitive measure. (Hawkinberry at 127 and 141). Both Plaintiff and Ms. Raimondo testified that the "demotion" decision was made after Plaintiff experienced a lengthy "interrogation" about the child abuse incident. (Raimondo at 131-32). Plaintiff also argues that the change resulted not only in the loss of his CDC director title but also in a loss of prestige and responsibility. As previously mentioned, Plaintiff alleges that removal of his CDC responsibilities foreclosed his ability to receive bonuses for his work in the center and alleges that before the change most of his time was spent at the CDC rather than the Cardiac Rehab Center or Fitness Center. While Plaintiff's and Ms. Hawkinberry's testimony that removing the CDC from Plaintiff's control amounted to a punitive action may not be sufficient to bolster Plaintiff's claim that he suffered an adverse employment action per Eleventh Circuit case law, a change in the ability to receive certain bonuses is at least a potential change in pay. It is well settled that a change in pay is an adverse employment action. *Hinsan v. Clinch County Bd. of Education*, 231 F.3d 821, 829 (11th Cir. 2000). It is not clear to this Court whether the change in Plaintiff's duties affected his potential bonuses. In addition, it is not clear whether the removal of Plaintiff's CDC duties changed his title from director to manager. Combined with the other evidence of an adverse employment action however, Plaintiff has proffered sufficient evidence

for this Court to find that there is a genuine issue of material fact regarding whether an adverse employment action took place when Plaintiff lost his CDC position.

Regarding the fourth prong of the prima facie case, Defendant notes that Plaintiff's "replacement" did not receive the same title designation as Plaintiff when she took over the CDC. Regardless whether Ms. Raimondo's title was the same as Plaintiff's after the change, Plaintiff has proffered sufficient evidence that he was in fact replaced by Ms. Raimondo, a person outside his protected class. Thus, Plaintiff has established a prima facie case of gender discrimination.

Because the plaintiff meets this burden, there is a presumption that intentional discrimination occurred. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 n.7 (1981); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir.1997). Thereafter, the presumption raised by the plaintiff's *prima facie* case may be rebutted by the employer's articulation of a legitimate, non-discriminatory reason for its adverse employment action. *Burdine*, 450 U.S. at 253. Although the employer's burden at this stage is one of production, and not persuasion, the burden cannot be met by mere formality. *See Walker v. Mortham*, 158 F.3d 1177, 1184 (11th Cir. 1998). Instead, "[t]he defendant must clearly set forth, through the introduction of admissible evidence," the reason for its adverse action, and that reason "must be legally sufficient to justify a judgment for the defendant." *Burdine*, 450 U.S. at 255. If the employer carries its burden by producing evidence of a legitimate, non-discriminatory reason for its action, the presumption of discrimination raised by the plaintiff's *prima facie* case falls away, leaving the plaintiff with the burden of persuading the fact finder that the employer's articulated reasons are a pretext for discrimination. *Id.*; *Combs*, 106 F.3d at 1528 (citations omitted).

As previously noted, Defendant maintains that Plaintiff lost his CDC position because Defendant's CEO wanted to eliminate an unnecessary level of management. Defendant argues that Plaintiff cannot show that this reason is a pretext for gender discrimination. To show pretext, the plaintiff "must provide sufficient evidence to allow a reasonable fact finder to conclude that the proffered reasons were not actually the motivation for [the challenged action] ... (1) by showing that the legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all of the evidence, discriminatory reasons more likely motivated the decision than the proffered reasons." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1332 (11th Cir.1998).

Although Plaintiff concedes that he does not have sufficient direct evidence of gender discrimination, he argues that he does have sufficient evidence of pretext; his previous supervisor, Shay Hawkinberry, made statements reflecting an intent to discriminate when she recommended he lose his CDC director position. As mentioned, Ms. Raimondo took control over the CDC after Plaintiff was relieved of this responsibility. Ms. Raimondo testified that she has been with the hospital since 1989 and currently works there.[5] Ms. Raimondo made notes (Pl. Ex. 3) that detail her version of some of the events surrounding the employment actions that Plaintiff complains about.

Ms. Raimondo testified at her deposition that she was given Plaintiff's CDC responsibilities- in part- because the parents of the children attending the center would be more comfortable with a woman. (Raimondo at 117-118, 127). Similarly, her written notes state that Ms. Hawkinberry recommended the change, in part, because "men shouldn't work in day care

---

[5] Evidently, Ms. Raimondo still worked at the hospital when she was deposed.

centers." (Ex. 3).

Defendant argues these comments are irrelevant because Ms. Hawkinberry merely recommended to Mr. Etheredge that Plaintiff lose his CDC position and therefore her intent and motivation are not relevant. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1270 (11th Cir. 2001) ("Where a decisionmaker conducts his own evaluation and makes an independent decision, his decision is free of the taint of a biased subordinate employee.") However, Ms. Hawkinberry stated in her deposition that she was involved in the decision to relieve Plaintiff of his CDC position. (Hawkinberry at 98). Further, Plaintiff has proffered the deposition of Carol Quay, who was the human resource director during Plaintiff's employ. Ms. Quay stated that Ms. Hawkinberry did recommend Plaintiff be relieved of his CDC responsibilities (Quay at 114). Ms. Hawkinberry also testified at one point that *she* "determined that [plaintiff] should not longer have oversight of the CDC..." (Hawkinberry at 85), albeit for a different reason which is discussed later in this Order. This Court finds that Ms. Hawkinberry was involved in the decision to change Plaintiff's job responsibilities; the statements are relevant for the purposes of this Order. Further, this Court finds that the statements allegedly made by Ms. Hawkinberry constitute sufficient evidence to defeat summary judgment.

There is a genuine issue of material fact whether Defendant's stated reason for removal of Plaintiff's CDC responsibilities is pretextual. Thus, Plaintiff has proffered sufficient evidence to defeat summary judgment on his gender discrimination claim *as it relates to the loss of his CDC position*.

### Disability Discrimination Claim under ADA and FCRA

To establish a prima facie case of discrimination under the ADA, plaintiff must show that

he "(1) had, or was perceived to have, a 'disability;' (2) was a 'qualified' individual; and (3) was discriminated against because of [his] disability." *Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1215 - 1216 (11th Cir. 2004) (citation omitted). Plaintiff must establish these same elements under the Florida Civil Rights Act. *Greene v. Seminole Elec. Co-op. Inc.*, 701 So. 2d 646 (Fla. 5th DCA 1997). The Hospital argues that it is entitled to summary judgment on Plaintiff's disability claims because Plaintiff cannot establish he was discriminated against because of his disability.

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Plaintiff must show that his impairment rises to the level of a disability. *Carruthers*, 357 F.3d at 1216. Additionally, under the "regarded as" prong, the perceived impairment must (like actual impairments) be one that, if real, would limit substantially a major life activity of the individual. 42 U.S.C. § 12102(2)(c)). *Id.* at 1215-16.

Plaintiff alleges that he was regarded as disabled (actual or perceived) in the major life activity of working, based on his coronary artery disease. Plaintiff proffers evidence that during his first medical absence, Ms. Raimondo was told she should not call him at home because it could "give him a heart attack." (Raimondo at 131). Ms. Raimondo's deposition and notes also state that Ms. Hawkinberry told her that removing Plaintiff's CDC responsibilities would relieve him of stress, presumably related to his medical condition, and thus would be a "favor" to him. (Raimondo at 183 and Exh. 3).

However, it appears that the portion of the exchange where Ms. Hawkinberry allegedly

11

made the comment about doing Plaintiff a "favor" by removing some of his stress was made in response to Ms. Raimondo articulating her objections to Plaintiff's "demotion."

It does not appear that Ms. Hawkinberry was actually discussing Plaintiff's heart condition or any accompanying stress as a reason for the "demotion" but rather stating why the action could be construed as helpful to Plaintiff in response to Ms. Raimondo's protest. Thus, any statements she may have made about why removing Plaintiff's CDC responsibilities would serve as a "favor" fail to amount to sufficient evidence that Plaintiff was terminated from his CDC responsibilities because of his heart condition. This Court also notes that any assumption that removal of Plaintiff's CDC duties would in fact lower his stress level is a reasonable assumption even if Plaintiff were not regarded as disabled considering that at the time of his "demotion" he was supervising three separate departments simultaneously.

Lastly, it is undisputed that Plaintiff continued to work at the Hospital on a daily basis, from May 6, 2002 through August 21, 2002 (Smith at 219-20) as either the Director or the manager responsible for the Cardiac Rehab Center and Fitness Center after the decision was made to change his work assignment; it is questionable whether Plaintiff was regarded by Defendant as disabled. In sum, Plaintiff has not proffered sufficient evidence that the reasons the CEO gave for his decision to change Plaintiff's work assignment are a pretext for *disability* discrimination. Plaintiff simply fails to produce any statement that rises to the level of evidence he was discriminated against because of his heart condition. Accordingly, the Hospital is entitled to summary judgment on Plaintiff's disability discrimination claims.

Claims regarding removal of Plaintiff's Cardiac Rehab and Fitness Center positions

As previously noted, Plaintiff claims that he was discriminated against not only when he

lost his CDC duties but also when he was terminated from his Cardiac and Fitness Center positions. At the time, Plaintiff had been on medical leave for ten months, his doctor had not released him to return to work, and he did not know when his doctor would release him. Defendant's CEO stated that the Fitness and Cardiac Rehab Centers ran well in his absence and that he terminated Plaintiff's employment after the expiration of his medical leave. The Eleventh Circuit has affirmed summary judgment for a defendant because, under similar circumstances, the plaintiff was not a "qualified individual." *Dunkett v. Dunlop Tire Corportion*, 120 F. 3d 1222, 1226 (11th Cir. 1997).

This Court agrees with Defendant that Plaintiff cannot show he was "qualified" at the time he lost his oversight of the Fitness Center and Cardiac Rehab Center. Further, there is no evidence that Defendant's proffered reasons for this particular decision are pretextual. Plaintiff cannot rely on evidence of any discriminatory statements made by Ms. Hawkinberry because it is undisputed that Ms. Hawkinberry had no involvement in the decision to eliminate Plaintiff's Fitness Center or Cardiac Rehab positions. Further, Ms. Hawkinberry left the Hospital in May 2002 (Hawkinberry at 17), several months before the challenged decision was made.

**ERISA Claim**

Section 510 of ERISA targets discriminatory conduct that is "designed to interfere with the exercise or attainment of vested or other rights under the plan or ERISA." *Owens v. Storehouse, Inc.*, 984 F.2d 394, 398 (11th Cir. 1993). Thus, "[t]o survive summary judgment, ... a plaintiff must present evidence of the employer's specific intent to violate ERISA." *Id.* In the absence of direct evidence of unlawful intent, the McDonnell Douglas burden-shifting scheme applies. *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir. 1992).

To establish a prima facie case of retaliation or interference under ERISA, a plaintiff must show "(1) that he is entitled to ERISA's protection, (2) was qualified for the position, and (3) was discharged under circumstances that give rise to an inference of discrimination." *Wolf v. Coca-Cola*, 200 F.2d 1337, 1343 (11th Cir. 2000). Plaintiff alleges that he was discriminated against, in part, because of the expensive health care he and his family required; Plaintiff had emergency heart surgery before the alleged discriminatory actions took place and Plaintiff's son experienced illness requiring hospitalization.

Plaintiff notes that Defendant's health plan which covered these medical expenses was self funded. However, Plaintiff does not dispute Defendant's contention that its decision to eliminate his CDC responsibilities did not affect his eligibility for health benefits. In addition, there is little, if any, admissible evidence to demonstrate that CEO Etheredge had knowledge of the amount of Plaintiff's past medical expenses or how much Plaintiff's future medical expenses would be. In sum, Plaintiff has failed to proffer sufficient evidence that he was discriminated against in violation of ERISA. Accordingly, Defendants are entitled to summary judgment on the ERISA Count.

**Whistleblower claim**

Regarding Plaintiff's Florida Whistleblower Act claim, Plaintiff alleges that he lost his CDC position, in part, because he "[o]bjected to, or refused to participate in" Defendant's unwritten child abuse reporting policy, which violates Florida's child abuse reporting statute, § 39.201, Fla. Stat. (2002).

To establish a prima facie case under the Florida Whistleblower Act, a plaintiff must show: "(1) that there was a statutorily protected participation; (2) that an adverse employment

14

action occurred; and (3) that there was a causal link between the participation and the adverse employment action." *Padron v. BellSouth Tele., Inc.*, 196 F.Supp.2d 1250, 1255 (S.D.Fla.2002), *aff'd*, 2003 WL 664703 (11th Cir. 2003).

Defendant argues that Plaintiff cannot establish a prima facie case, *inter alia*, because there was no statutorily protected participation. According to the Defendant, the Whistleblower Act only applies to objections relating to unlawful acts of the employer, not unlawful acts by co-employees. Defendant notes that the Child Abuse Reporting statute does not mandate that facilities, such as nursing homes or hospitals, report suspected abuse; the duty to report is imposed only on individual persons. § 39.201(1)(a).

Assuming Defendant's argument is correct, it misses the mark. Plaintiff alleges that the hospital's policy interfered with its *employees'* ability to report suspected abuse. Further, although the Hospital CEO stated via affidavit that he had no knowledge of any statutorily protected objection by Plaintiff about the policy at the time he decided to change Plaintiff's work assignment, Plaintiff has proffered sufficient evidence to defeat summary judgment. Both Plaintiff and Ms. Raimondo testified that the Hospital's policy was to inform management of suspected abuse in lieu of DCF and that they were reprimanded because Ms. Raimondo called DCF about the suspected abuse before informing hospital management. (Raimondo at 176-180) Ms. Raimondo testified that Plaintiff's CDC position was taken away, in part, because of the call to the state authorities about the injured child. (Raimondo at 147).

Further, Plaintiff has proffered the deposition of Carol Quay regarding this issue. Ms. Quay testified that she assumed that Mr. Etheredge made his decision based upon Plaintiff's failure to "communicate" with Ms. Hawkinberry. (Quay at 112-13). Indeed, Ms. Hawkinberry

testified that Plaintiff was given a low employment performance rating on his 2002 evaluation and she "determined that [plaintiff] should not longer have oversight of the CDC..." because he did not communicate with her about the suspected child abuse incident. (Hawkinberry at 85 and 170).[6] This evidence coupled with Plaintiff and Ms. Raimondo's statements about the hospital's child abuse reporting policy are sufficient evidence to defeat summary judgment on Plaintiff's Whistleblower claim.

### HCA's Motion

HCA has filed its own Motion for Summary Judgment based on its contention that it is not Plaintiff's employer for the purposes of the claims in his Complaint. According to HCA, Memorial Healthcare Group, Inc. is merely an "indirect subsidiary of HCA;" HCA maintains that its consent regarding the employment actions taken towards Plaintiff was neither required nor sought; Memorial Hospital employees controlled the management and day to day operations of the hospital.

HCA also notes that it was not named in Plaintiff's Charge of Discrimination with the EEOC. Ordinarily an unnamed party in an EEOC charge cannot be sued in a subsequent civil action. *Virgo v. Riveria Beach Assocs.*, 30 F.3d 1350, 1358 (11th Cir. 1994). However, Plaintiff argues that HCA had notice of the charge because it shares legal representation with the hospital. When a parent corporation and its subsidiary share legal counsel the parent company can be deemed to have notice of the charge. *Digiro v. Pall Corp.*, 993 F. Supp. 1471, 1474 (M.D. Fla. 1998). Thus, Plaintiff failing to list HCA on his charge is not fatal to his claims

---

[6] Evidently, Plaintiff communicated his initial concerns about the employee suspected of abuse to the Hospital's risk management department. (Hawkinberry at 86-87).

against it.

However, as noted, HCA also argues that its summary judgment motion should be granted because it did not participate in either the decision to remove Plaintiff's CDC director or Cardiac Rehab and Fitness Center responsibilities. The Court notes that there is a general rule that a parent company is not liable for its subsidiary's acts unless the corporation acts as a joint employer or otherwise directly participates as a party in the improper employment decisions that relate to a Plaintiff. Thus, the critical issue is whether HCA controlled the the hospital's labor relations. *Thorton v. Mercantile Stores, Co. Inc.*, 13 F. Supp. 2d 1282, 1291 (M.D. Ala. 1998).

Plaintiff notes that Ms. Quay testified that she obtained advice from HCA attorneys before changing Plaintiff's responsibilities.(Quay at 26). However, a review of Ms. Quay's deposition demonstrates that she consulted HCA only regarding elimination of Plaintiff's responsibilities for the Cardiac Rehab and Fitness Center departments; there is no evidence that HCA was consulted regarding elimination of Plaintiff's CDC responsibilities. Because this Court has determined that removal of Plaintiff's Cardiac Rehab and Fitness Center responsibilities cannot serve as grounds for his discrimination claims, any consultation with HCA regarding the removal of these responsibilities is irrelevant. Plaintiff has proffered no other evidence that HCA participated in the decision to remove Plaintiff's CDC responsibilities. Thus, summary judgment is granted on HCA's Summary Judgment Motion and HCA Incorporated is dismissed from this case.

**Motion to strike**

In Defendants' Motion to Strike Jury Demand, it seeks to strike Plaintiff's jury demand on some of his claims and dismiss or bifurcate his state law claim. Specifically, Defendant argues

that Plaintiff's claim of retaliation under the Florida Whistle Blower Act should be dismissed or alternatively be bifurcated from claims that are to be heard before a jury. Defendants also argue that Plaintiff's ERISA and ADA retaliation claims should be set for a bench trial; this portion of the motion is moot in light of the fact these claims have been dismissed.

Regarding the Florida Whistleblower statute, Defendant cites several state court cases to bolster its argument that Florida's Act does not provide a Plaintiff with the right to a jury trial. Defendants further argue that a jury trial on this claim would "substantially and unnecessarily prolong this trial" because the fact finder would have to make determinations regarding a "substantially different" and "greatly expanded set of facts."

Plaintiff, however, proffers *federal* case law demonstrating at least one Florida court has granted a jury trial in a case involving the Florida Whistleblower Act; Plaintiff correctly notes that a federal court need not follow the dictates of state courts regarding jury trial rights. *Simler v. Conner*, 372 U.S. 221, 222 (1963).

Plaintiff also contends that the facts relevant to his whistleblower count are intertwined with the facts that prove his discrimination claim.[7] In addition, Plaintiff points out that his is a "mixed motive" case; he claims he experienced adverse employment actions for a combination of reasons prohibited separately by, *inter alia*, the Florida Whistleblower Act and Title VII. This Court agrees that Plaintiff's remaining claims are intertwined and that the whistleblower claim should be tried by jury with the Title VII Count.

In sum, Plaintiff has provided enough evidence to sustain his claims of gender discrimination and a violation of the Florida Whistleblower Act against defendant Memorial

---

[7] Plaintiff also argues that this case is scheduled only for a five day trial.

Hospital as it relates to the removal of his CDC responsibilities.

Accordingly, it is **ORDERED**:

1. Defendants' Motion to Strike.... (Dkt. 103) is **DENIED;**

2. Plaintiff's Third Motion for Extension of Time to File Jury Instructions...... (Dkt. 169) is **GRANTED**;

3. Defendants' Motion to Exclude.... (Dkt. 104) is **DENIED without prejudice**;

4. The motions to strike exhibits re: summary judgment motions (Dkts. 67, 69, 87, 90, and 93) are **MOOT**;

5. Defendant Memorial Hospital's Motion for Summary Judgment... (Dkt. 56) is **GRANTED IN PART**; Plaintiff's ERISA and disability discrimination claims under both the ADA and the FCRA are dismissed. In addition, Plaintiff's claims regarding the removal of his Fitness Center and Cardiac Rehab Center responsibilities are also dismissed; Plaintiff's only claim of an alleged adverse employment action relates to the purported removal of his CDC responsibilities.

6. Defendant HCA's Motion for Summary Judgment (Dkt. 63) is **GRANTED in its entirety** and **Defendant HCA Incorporated is dismissed from this case**.

7. Defendant's Emergency Motion for Sanctions (Dkt. 161) is **MOOT**.

**DONE AND ORDERED** at Jacksonville, Florida, this 26 day of July, 2005.

HENRY LEE ADAMS, JR.
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record